# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

### DOCKET NO. 3:09-cv-172-FDW

| | |
|---|---|
| JOHN PARKS SIMPSON and FREDA SIMPSON, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| AIR LIQUIDE AMERICA, LP, et al., | ) ) |
| Defendants. | ) ) ) |

**ORDER**

THIS MATTER comes now before the Court upon Defendants' Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Doc. Nos. 5, 28, 36, 40, 42). Although Defendants have filed their Motions separately, the issues raised within each motion are identical. The Court will, therefore, resolve the Motions simultaneously in this Order. For the reasons stated herein, Defendants' Motions are DENIED.

## BACKGROUND

On July 12, 2002, Plaintiff John Simpson was diagnosed with silicosis. On December 13, 2003, he was diagnosed with adenocarcinoma (lung cancer). Mr. Simpson alleges that his exposure to silica in his workplace environment caused these maladies.

On April 20, 2005, Mr. Simpson filed a complaint in the Court of Common Pleas, York County, South Carolina, against the same defendants named in this action, alleging that his workplace exposure to silica caused his injuries and seeking compensatory damages. The court dismissed his case pursuant to South Carolina's door closing statute, S.C. Code Ann. § 15-5-150

(West 2008). On November 16, 2006, Plaintiffs re-filed essentially the same complaint in Harris County District Court in Texas, alleging the same facts against the same defendants. On April 22, 2009, Plaintiffs filed their Complaint in this Court, again alleging the same facts against the same defendants. On June 1, 2009, Plaintiffs moved to voluntarily dismiss their Texas case, and the Harris County District Court dismissed the case without prejudice on June 11, 2009. (John Parks Simpson and Feda Simpson v. Air Liquide American, LP, et al., No. 2006-73547, Documents 42500632, 42469439, 42459008.)

## **STANDARD**

A motion for judgment on the pleadings under Rule 12(c) is decided under the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405 (4th Cir. 2002); see also Williams v. Frontier Spinning Mills, Inc., 368 F. Supp. 2d 491, 492-93 (M.D.N.C. 2005).

While a complaint need not contain detailed factual allegations in order to survive a 12(b)(6) motion, the plaintiff must plead enough to give the defendant "fair notice" of the claim and "the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). As the Supreme Court explained in Twombly, a complaint survives Rule 12(b)(6) if it alleges "enough facts to state a claim to relief that is plausible on its face." Id. at 570. The Court must assume that the allegations in the complaint are true and construe them in the light most favorable to the plaintiff. Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

Defendants contend that Plaintiffs' cause of action is time-barred by North Carolina's statute

of limitations. A defense based on the statute of limitations ordinarily must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant. See Fed. R. Civ. P. 8(c); see also Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 427 F.2d 862, 870 (4th Cir. 1970). Thus, as the Fourth Circuit has stated:

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[] on the face of the complaint."

Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007); see also Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).

Plaintiffs' Complaint contains sufficient facts to rule on Defendants' statute of limitations affirmative defense. Consequently, the Court will consider and rule upon Defendants' Motions using the Rule 12(b)(6) standard.

## ANALYSIS

Plaintiffs have come to this Court under diversity jurisdiction pursuant to 28 U.S.C. § 1332. As such, the Court "must apply the substantive law of the forum state including its choice of law rules." Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). For a case sounding in tort such as this, North Carolina courts apply the rule of lex loci delicti. Braxton v. Anco Elec., Inc., 409 S.E.2d 914, 915 (N.C. 1991). As is discussed in more extensive detail below, the Court finds that the place of the wrong was North Carolina. North Carolina's substantive law, including its statute of limitations, therefore applies.

Under North Carolina law, causes of action for fraud and personal injury must be commenced within three years. N.C. Gen. Stat. § 1-52(9), (16). Regarding Plaintiffs' personal injury claims, the cause of action "shall not accrue until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant, whichever first occurs." Id. "Once the statute of limitations begins to run, it continues to run until appropriate judicial process is commenced." Clark v. Velsicol Chemical Corp., 431 S.E.2d 227, 228 (N.C. 1993).

Plaintiffs do not dispute that their claims are subject to a three-year period of limitation. Rather, Plaintiffs contend that their prior actions, first in South Carolina and then Texas, have tolled the statute of limitations pursuant to North Carolina's one-year savings provision. N.C. Gen. Stat. § 1A-1, Rule 41(a)(1). Under North Carolina Rule of Civil Procedure 41(a)(1), "If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal." Id. Defendants argue that this rule is inapplicable because it applies only to actions initially brought in North Carolina state court, voluntarily dismissed, and then brought again in North Carolina state court. This narrow reading of North Carolina's savings provision, however, is not supported by the most recent case law.

In Bockweg v. Anderson, 402 S.E.2d 627 (N.C. 1991), the North Carolina Supreme Court explained that the important fact is not *where* the action was originally brought, but rather the *substantive law* that applied to the original action. Bockweg involved a case that was originally brought in federal court by way of diversity jurisdiction, which the plaintiff voluntarily dismissed and then re-filed in the Superior Court of Forsyth County. Id. at 628. The superior court dismissed the case, ruling that the statute of limitations was not tolled by the original action because it was

brought in federal court rather than North Carolina state court. Id. The court of appeals reversed, and the North Carolina Supreme Court affirmed the reversal. The court began with the well-established Erie principle that "except in matters governed by the federal Constitution or acts of Congress, diversity cases involve application by the federal court of substantive provisions of state law." Id. at 629. The court then held that North Carolina's savings provision was "strictly a substantive matter of state law" and, as such, applied to a federal diversity case that was voluntarily dismissed without prejudice and then recommenced in North Carolina state court. Id. at 630; see also Kahn v. Sturgil, 66 F.R.D. 487, 491 (M.D.N.C. 1975) ("The tolling of a state statute of limitation in a diversity case is strictly a substantive matter of state law . . . .").

The North Carolina Court of Appeals expounded upon this reasoning in Clark v. Velsicol Chemical Corp., 431 S.E.2d 227, 229 (N.C. App. 1993), stating:

> Filing an action in federal court puts a defendant on notice that a claim is being asserted against him. We see no reason why filing in federal court should not toll the statute of limitations on a claim which is based on state substantive law. Therefore, we hold that filing an action in federal court which is based on state substantive law does toll the statute of limitations while that action is pending.

Again, the important fact is not the location of the initial lawsuit, but rather the law applicable to that lawsuit. If the original court would have applied North Carolina substantive law, the defendant is on notice that he must defend himself under that law, and the historical function of the statute of limitations is satisfied. See id. (quoting Gaines v. City of New York, 109 N.E. 594, 596 (N.Y. 1915) ("The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts.")). Ultimately, the court in Clark did not apply the savings provision because the case before it was involuntarily dismissed with

prejudice for lack of diversity jurisdiction, not voluntarily dismissed without prejudice by the plaintiff as was the case in Bockweg.[1]

The instant case was not first commenced in federal court, but in the state courts of South Carolina and Texas. Thus, Defendants argue, North Carolina's savings provision does not apply. According to the principle in Bockweg, however, the focus is not on the location of the initial suit, but the law applicable to that suit. Even Defendants' memoranda support this interpretation of the law. (See Def. Air Liquide's Mem., Doc. No. 41, at 6 ("[Rule 41] refer[s] to actions that were commenced within the state (*or actions applying that state's law*).") (emphasis added); Def. Mine Safety Appliances' Mem., Doc. No. 43, at 6 (same).) Furthermore, it has long been a principle of American jurisprudence that "the courts of the United States are tribunals of a different sovereignty, and exercise a distinct and independent jurisdiction from that exercised by the state courts; and this is true in respect of the courts of the several states, as between each other." Cooper v. Newell, 173 U.S. 555, 556 (1899). Applied to the instant case, this principle means that the federal court discussed in Bockweg was just as much of a "different sovereignty" as the state courts of South Carolina and Texas. The Court must therefore turn to the choice-of-law principles of those states to determine whether their courts would have applied North Carolina law. If North Carolina law applied to those actions, the Court sees no logical reason why the principle of Bockweg would not apply.

---

[1] In the instant case, the dismissal of the South Carolina action is distinguishable from Clark because South Carolina's door closing statute is not jurisdictional, but rather a matter of capacity to sue. See Moosally v. W.W. Norton & Co., Inc., 594 S.E.2d 878, 887 (S.C. 2004). Under South Carolina law, "the defense of capacity to sue can be waived by a defendant if not raised." Chet Adams Co. v. James F. Pedersen Co., 413 S.E.2d 827, 829 (S.C. 1992); cf. Farmer v. Monsanto Corp., 579 S.E.2d 325, 327-28. As such, a dismissal under the door closing statute is more akin to a dismissal under North Carolina Rule of Civil Procedure 41(a)(2), not Rule 41(b) as in Clark.

### A. South Carolina - Lex Loci Delicti

"Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by the lex loci delicti, the law of the state in which the injury occurred." Boone v. Boone, 546 S.E.2d 191, 193 (S.C. 2001).[2] In their Complaint, Plaintiffs state that they "are residents of Marshville, Union County North Carolina and have been during the relevant time frame." (Compl. ¶ 2, Doc. No. 1.) In his original South Carolina complaint, Mr. Simpson stated that he "worked for various employers at jobsites [sic] in South and North Carolina." (Def.'s Ex. A, Doc. No. 6-2, at ¶ 5.) Mr. Simpson's medical records further indicate that he "has worked almost his entire career at Charlotte Pipe & Foundry in Charlotte, NC, with high degree of exposure to silica sand and silica flour." (Def.'s Ex. D, Doc No. 6-5, at 3.) It would therefore appear that North Carolina is the primary place of the wrong that occurred in this case, namely Mr. Simpson's exposure to silica.[3] Accordingly, the South Carolina court would have applied North Carolina law, including North Carolina's statutes of limitations, to Plaintiffs' case.

### B. Texas - Most Significant Relationship

Texas courts use the "most significant relationship" test from the Restatement (Second) of Conflict of Laws. Torrington Co. v. Stutzman, 46 S.W.3d 829, 848 (Tex. 2000). Section 145 contains the factors relevant to a tort case:

(a) the place where the injury occurred,

---

[2] The only exception being when "good morals or natural justice," i.e., South Carolina public policy, compel a different result. Boone, 546 S.E.2d at 193.

[3] Indeed, the York County Court of Common Pleas must have agreed, as it otherwise would not have applied South Carolina's door closing statute. The door closing statute allows actions to proceed "when the cause of action shall have arisen or the subject of the action shall be situated within this State." S.C. Code Ann. § 15-5-150 (West 2008). In applying the statute, the court must have determined that the cause of action arose in North Carolina, not South Carolina.

  (b) the place where the conduct causing the injury occurred,
  (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
  (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2) (1971); <u>Stutzman</u>, 46 S.W.3d at 848.  Of these factors, the place where the injury occurred is particularly important to personal injury cases.  As the Restatement comments explain:

> In the case of personal injuries . . . the place where the injury occurred is a contact that . . . plays an important role in the selection of the state of the applicable law . . . .  This is so for the reason among others that persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury.

<u>Id.</u> cmt. e.  The alleged fact that Mr. Simpson was exposed to silica in North Carolina supports the application of North Carolina law under either subsection (a) or (b).  The place of domicile or residence of the parties is not as relevant here, as this case does not involve a reputational tort, and the parties are spread across several states.  <u>See</u> <u>id.</u>  As for subsection (d), it appears that Mr. Simpson's employment was in Charlotte, North Carolina, again supporting the application of North Carolina law.  (<u>See</u> Def.'s Ex. D, Doc No. 6-5, at 3.)

## **CONCLUSION**

  The principle espoused by the North Carolina Supreme Court in <u>Bockweg</u> is that the law applicable to, not the location of, the initial forum is the relevant consideration for the application of North Carolina's savings provision.  As such, the Court has looked to the choice-of-law principles of the previous fora, South Carolina and Texas state courts, to determine the law that those courts would have applied.  Under either the common law doctrine of lex loci delicti or the Restatement's most significant relationship test, North Carolina law is the inevitable result.  Thus, under the

rationale of Bockweg, the Court will apply North Carolina's savings provision, holding that the South Carolina action and the subsequent Texas action effectively tolled the applicable statute of limitations.

The Court is aware that the North Carolina Supreme Court has not taken Bockweg's reasoning beyond a federal court sitting in diversity to another state court. Indeed, the court in Bockweg recognized that "there may be legitimate reasons to deny application of our savings provision when a party has voluntarily dismissed in another state's court system." Bockweg, 402 S.E.2d at 634. This case, however, does not present any such reasons. Both the courts of South Carolina and Texas would have applied North Carolina law to resolve this dispute, a fact that even the most cursory examination of the applicable choice-of-law principles would have revealed. Accordingly, the key rationale behind the statute of limitations, that the "litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts," has been satisfied. Id. at 229 (quoting Gaines, 109 N.E. at 596). In other words, Defendants have known since at least April 20, 2005, that they will have to defend themselves under North Carolina law. They are, therefore, not prejudiced by allowing this action to proceed.

For the reasons stated herein, Defendants' Motions to Dismiss are DENIED.

IT IS SO ORDERED.                Signed: July 20, 2009

Frank D. Whitney
United States District Judge